UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>EOLAS TECHNOLOGIES INCORPORATED, et al.,<br><br>    Defendants. | Case Nos. 13-cv-05997-JST; 13-cv-06003-JST<br><br>**ORDER DENYING MOTIONS TO DISMISS FOR LACK OF JURISDICTION** |
| J. C. PENNEY CORP., INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>EOLAS TECHNOLOGIES INCORPORATED, et al.,<br><br>    Defendants. | Re: ECF No. 25; ECF No. 18 |

Before the Court are Defendants Eolas Technologies, Inc. and the Regents of the University of California's Motions to Dismiss for lack of jurisdiction. The Court will deny the motions.[1]

**I.    FACTUAL BACKGROUND**

Google filed this action seeking a declaration of non-infringement after receiving a December 19, 2013 letter from Eolas claiming that Google was infringing the patents it licenses

---

[1] Case No. 13-cv-05997-JST and Case No. 13-cv-06003-JST are related cases. Because the jurisdictional allegations in the complaints and the pertinent facts in both cases are functionally identical, compare ECF No. 1, Case No. 13-cv-05997-JST, with ECF No. 1, Case No. 13-cv-06003-JST, this Order resolves the jurisdictional issues as to both J. C. Penney Corp. and Google, Inc. For the sake of brevity, however, the rest of this Order refers only to Google, except where differences between the cases are noted.

from the Regents, United States Patent Nos. 8,082,293 and 8,086,662.  ECF No. 1 at 1-2.  Eolas is incorporated and has its principal place of business in Texas, and the Regents is incorporated in California and maintains its principal place of business there.  Id. at 3.

Google alleged that this Court has personal jurisdiction over Eolas based on Eolas': (1) communications and business agreements with the Regents; (2) exclusive license to the patents that the Regents granted to Eolas for the purpose of patent litigation; (3) initiation of patent litigation against various California entities; (4) settlement agreements with various California entities; (5) communications to Google in California, as well as to other California entities; (6) availing itself of the Northern District of California by seeking judicial relief in a separate case; (7) having incorporated and identified an agent for service of process in California in the past; (8) business relationship with the Regents, including the payment of royalties to the Regents; and (10) the Regents' and Eolas' status as co-defendants in related patent actions.  Id. at 4-5.  Google also alleged that this Court has jurisdiction over the Regents pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  Id. at 3.

Eolas and the Regents moved to dismiss the action for lack of (1) personal jurisdiction over Eolas pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and (2) subject matter jurisdiction over the Regents pursuant to Rule 12(b)(1).  ECF No. 25 at 1.  Defendants also requested that the Court transfer this case to the Eastern District of Texas, where cases addressing the same patents are pending.  Id. at 16-18.  Google opposed the motion in all respects, and asked the Court to grant jurisdictional discovery if necessary to resolve the motion.  ECF No. 29.

## II. LEGAL STANDARD

Plaintiff bears the burden of establishing this Court's jurisdiction.  Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).  In patent cases, the Court applies the law of the Federal Circuit to the issue of jurisdiction "because the jurisdictional issue is 'intimately involved with the substance of the patent laws.'"  Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008) (citations omitted).  Because the parties have not conducted discovery, Google must only have made a prima facie showing that Eolas and the Regents are subject to this Court's jurisdiction.  Id.  Accordingly, "the pleadings and affidavits are to be construed in the light most

2

favorable to [Google]." Id. at 1328-29 (citations omitted).

## III. ANALYSIS

### A. Personal Jurisdiction

The determination of personal jurisdiction over a non-resident defendant entails two inquiries: whether (1) the forum's long-arm statute permits service of process on the defendant; and (2) jurisdiction complies with due process. Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (9th Cir. 2003) (citations omitted). Because California's long-arm statute is co-extensive with due process, see California Code of Civil Procedure § 410.10, the Court analyzes whether Google has alleged sufficient contacts to satisfy the minimum contacts standard set forth in International Shoe v. Washington, 326 U.S. 310, 316 (1945). Coyle, 340 F.3d at 1350.

Personal jurisdiction can be either general or specific. Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014). To establish general jurisdiction, a plaintiff must prove that defendant's contacts with the forum are so continuous and systematic that the defendant is virtually "at home" in the forum. Id. at 751 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846 (2011)). This showing is generally only satisfied by the defendant having been incorporated in the forum state, or maintaining its principal place of business there. Daimler, 134 S. Ct. at 760-61. Because Eolas is not incorporated and does not have its principal place of business in California, the Court reserves judgment as to whether Eolas is subject to general jurisdiction here.

As for specific jurisdiction, the court looks to "whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) asserting personal jurisdiction is reasonable and fair." Coyle, 340 F.3d at 1350 (citations omitted). The plaintiff must demonstrate that the first two prongs have been satisfied—i.e., establish "minimum contacts" with the forum—while the defendant must disprove the reasonableness and fairness of a court's assertion of jurisdiction. See Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1331 (Fed. Cir. 2008) ("where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.") (citations and internal alterations omitted).

1. Minimum Contacts

In declaratory judgment actions asserting non-infringement of a patent, the Federal Circuit has identified several activities that constitute cognizable "contacts." For example, based on U.S. Supreme Court precedent, the Federal Circuit has repeatedly held that an exclusive licensing agreement—where the licensee is located in the forum state and the licensing agreement contemplates "continuing obligations" between the parties to the agreement—supports a finding of personal jurisdiction over the licensor. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985) ("where the defendant . . . has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there") (internal citations and alterations omitted); e.g., Breckenridge Pharmaceutical, Inc. v. Metabolite Labs., Inc., 444 F.3d 1356 (Fed. Cir. 2006) ("through its relationship with [its licensee], which sells products in [the forum state], [defendant licensor] has purposefully availed itself to the privilege of conducting activities within [the forum state]."); Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194 (Fed. Cir. 2003) ("Exclusive license agreements with respect to the patents at issue with residents of the forum . . . have . . . been held sufficient to confer personal jurisdiction."); Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir. 1995) ("the exclusivity of [defendant's] licensing agreement with [the resident licensee] created continuing obligations . . . . Indeed, it could scarcely be more clear that [defendant licensor] purposefully directed activities at residents of [the forum] within the meaning of the due process inquiry mandated by Burger King and International Shoe").

To be sure, the aforementioned cases all involved out-of-state defendants who were licensors of a patent, rather than, as here, the licensee. But the "continuing obligation" test applies equally here. See Breckenridge, 444 F.3d at 1366 (explaining that where the defendant has a "licensee equivalent" relationship with a resident of the forum state that involves an agreement establishing continuing obligations between the defendant and the forum resident, personal jurisdiction will lie).

In order to count as a contact, the continuing obligations under the licensing agreement must constitute more than the mere payment of patent royalties. Id., 444 F.3d at 1366 (citing Red

Wing Shoe, 148 F.3d at 1357-58).  Continuing obligations that count for these purposes include activities related to the litigation or enforcement of the patent, and sales or marketing activities over which the defendant has control.  Id.

Here, Eolas' continuing obligations to the Regents under the licensing agreement include: the marketing and sale of the patents, joint prosecution and defense of patent-related actions, indemnification of the Regents, regular recordkeeping, bookkeeping, accounting, and reporting to the Regents for patent-related activities, the payment of patent royalties to the Regents, and a duty of due diligence in all patent-related activities.  ECF No. 30-2 at 8, 11-15, 18-19, 21-24.  The exclusive licensing agreement, which created continuing patent-related obligations between Eolas and the Regents, counts as a constitutional contact.

Google has identified other contacts with California, including the December 19, 2013 letter sent from Eolas to Google in California.[2]  A cease-and-desist letter sent by a defendant to the forum state, when coupled with an exclusive licensing agreement, has been held sufficient to confer personal jurisdiction over the defendant.  See Avocent, 552 F.3d at 1334-35 (citing cases).

Further, Eolas consented to California law in the choice of law provision in the licensing agreement, see ECF No. 30-2 at 26, which demonstrates that Eolas has chosen to avail itself of the benefits and protections of California's laws.  See Burger King, 471 U.S. at 481-82 (explaining that a choice-of-law provision identifying the forum's laws as governing a contract the defendant was party to, in combination with the defendant's "20-year interdependent relationship" under the contract with a forum resident, "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").

In addition, Eolas was created in California and incorporated in California for five years, entered into the original licensing agreement while in California, and engaged in patent-related activities in California before relocating to Texas.  See Breckenridge, 444 F.3d at 1365 (counting as a contact the fact that defendant had in the past conducted patent-related business in the forum

---

[2] On this point, Case No. 13-cv-06003-JST differs from Case No. 13-cv-05997-JST.  The December 19, 2013 letter sent from Eolas to J. C. Penney was sent to J. C. Penney's Texas address, not to a California address.  ECF No. 36, Case No. 13-cv-06003, at 10.  Because of Eolas' other contacts with California, however, this fact is not dispositive.

state). And the length of time the Regents and Eolas have been subject to the agreement—twenty years—also factors into the minimum contacts analysis. See Akro, 45 F.3d at 1546 (noting that defendant, through a licensing agreement with a resident of the forum, directed activities at the forum for a period of three years).

Because of these contacts, Eolas reasonably could have anticipated being subject to litigation in California. Google has pointed to sufficient contacts to establish personal jurisdiction.

2.  Reasonableness and fairness

Eolas argues that the exercise of jurisdiction here is unreasonable and unfair because the Federal Circuit has declined to find jurisdiction based solely on infringement letters a defendant sent to the forum state. ECF No. 25 at 13. As discussed above, the Court is not relying solely on the December 19, 2013 letter for personal jurisdiction over Eolas. Eolas has not shown that it would be unfair or unreasonable to subject it to jurisdiction in California. To the contrary, the Court finds that Eolas' license with the Regents, its choice of California law, and the other contacts described above make the exercise of specific jurisdiction reasonable and fair.

B.  Subject Matter Jurisdiction as to the Regents

The Declaratory Judgment Act, 28 U.S.C. § 2201, requires, for the purposes of subject matter jurisdiction,

> that the dispute be definite and concrete, touching the legal relations of the parties having adverse legal interests, and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law should be upon a hypothetical state of facts.

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citation and internal alterations omitted). Eolas argues this Court has no subject matter jurisdiction over the Regents because the Regents retain no substantial rights in the patent, and no right to enforce the patents. ECF No. 25 at 15-16.

Because the Regents own the patents at issue, they have real, substantial legal interests in this matter that are adverse to Google's interests. Eolas cites two cases as holding to the contrary. Neither analyzes subject matter jurisdiction, however. Moreover, both cases support a finding that this Court has subject matter jurisdiction over the Regents. See Morrow v. Microsoft Corp., 499

6

F.3d 1332, 1339-40 (Fed. Cir. 2007) (noting that the rights of an exclusive licensee "'must be enforced through or in the name of the owner of the patent,' and [that] the patentee . . . is usually joined to satisfy prudential standing concerns.") (citing Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459 (1926)); Alfred E. Mann Found. for Scientific Research v. Cochlear Corp., 604 F.3d 1354, 1357-60 (Fed. Cir. 2010) (analyzing the scope of an exclusive licensee's rights to a patent in order to assess whether the patent owner had constitutional standing to sue for infringement and concluding that the patent-owner retained substantial rights in the patent, and therefore had standing to sue).

Even applying Cochlear Corp. to evaluate whether the Regents retain substantial rights in the patents, it is clear that this Court has jurisdiction over the Regents.  Under the license agreement, the Regents have the following rights: to terminate the license or reduce Eolas' rights under the license; to sublicense the patents to others in certain circumstances; to Eolas' due diligence with respect to patent-related activities; to publish and use technical data from any research related to the patent; to the payment of royalties; to a portion of any judgment entered in favor of the patent; and to reports, accounting, and recordkeeping by Eolas regarding its patent-related activities.  See ECF No. 30-2 at 11-16.  This dispute touches on the Regents' real and substantial legal interests in the patents at issue.  The Court has subject matter jurisdiction over the Regents.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is hereby DENIED. [3]

**IT IS SO ORDERED.**

Dated: June 24, 2014

_____
JON S. TIGAR
United States District Judge

---

[3] Because the Court finds it has subject matter jurisdiction over the Regents and personal jurisdiction over Eolas, it does not reach Defendants' remaining arguments or Plaintiff's request for jurisdictional discovery.